# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| LANCE BROWNING, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No.:  1:18-cv-00763 |
| v. | |
| THE OHIO NATIONAL LIFE INSURANCE COMPANY, | **CLASS ACTION COMPLAINT** |
| Defendant, | **JURY TRIAL DEMANDED** |
| And | |
| OHIO NATIONAL LIFE ASSURANCE COMPANY, | |
| Defendant, | |
| And | |
| OHIO NATIONAL EQUITIES, INC., | |
| Defendant. | |

Ohio National is unlawfully trying to change the rules after the game has already started. Ohio National has issued billions of dollars' worth of variable annuity policies with guaranteed income benefit riders.  The issuance of these policies involves four parties – Ohio National (the issuer), a broker-dealer (which has a "selling agreement" with Ohio National permitting it to sell the policies), a securities representative (who advises the customer about the policy), and a customer (who purchases the policy).  Ohio National has induced the sale of its policies by promising annual, recurring commissions to the broker-dealers and, by extension, the securities representatives, and customers have purchased these policies believing that they will be able to rely on their trusted securities representatives to advise them on how to manage the investments in the policy and whether or when to annuitize or surrender the policy.  Having induced the sales of

these policies based on these promises, Ohio National has announced that it does not intend to hold up its end of the bargain – it is refusing to pay the promised recurring commissions, and thereby effectively cutting off customers from receiving financial advice about these policies from their trusted financial advisors. Ohio National is not allowed to do that.

Plaintiff Lance Browning ("Plaintiff") therefore brings this Class Action Complaint, based upon his personal knowledge, on information and belief, and on the investigation of his counsel, on behalf of himself and the proposed class defined herein, and by and through the undersigned counsel, and alleges as follows:

## I.     INTRODUCTION

1.     Plaintiff is one of thousands of licensed securities representatives who have sold variable annuities to customers nationwide that feature a guaranteed minimum income benefit (GMIB) rider, offered by The Ohio National Life Insurance Company and its subsidiaries Ohio National Life Assurance Company and Ohio National Equities, Inc. (collectively, "Ohio National" or "Defendant").

2.     Pursuant to the Selling Agreements entered into by Ohio National and numerous broker-dealers, the broker-dealers and their affiliated securities representatives marketed and sold the Ohio National GMIB Variable Annuities (the "Annuities") to customers, with all customer premiums from those sales being paid directly to Ohio National. In return for promoting, selling, and servicing the Annuities, the broker-dealers and their affiliated securities representatives receive commissions, including "trailing commissions" that are paid to the broker-dealer and affiliated registered representatives on a yearly basis until and unless the Annuities were surrendered or annuitized.

3.     On September 28, 2018, Ohio National announced that it was terminating the Selling Agreements with all broker-dealers with regard to the Annuities. As part of that termination, it also announced that it would no longer pay trailing commissions stemming from Annuities that were already in existence.

4.      While Ohio National has the right to discontinue *future* sales of the Annuities, it may not unilaterally terminate its obligation to pay trailing commissions on *existing* Annuities.

5.      Perhaps even worse, Ohio National's decision to stop paying trailing commissions for which it is already obligated will not even reduce the expenses for investors.  The costs of the Annuities will not go down one penny.  Rather, instead of paying trailing commissions to the broker-dealers and their securities representatives, Ohio National has decided to simply pocket that money itself instead.  And incredibly, Ohio National has not even implemented this unfair and improper policy evenly across the board as to all broker-dealers: it is continuing to pay trailing commissions to its own captive broker-dealer, Ohio National Equities, Inc. Furthermore, Ohio National is continuing to pay trailing commissions to broker-dealer Morgan Stanley Smith Barney LLC ("Morgan Stanley") and its securities representatives.

6.      Plaintiff and the class also seek an injunction to prevent Ohio National from terminating its obligations to Plaintiff and the class, as well as declaratory relief resolving Ohio National's future obligations pursuant to the Selling Agreements.

## II.      JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction of Plaintiff's Declaratory Relief claim pursuant to 28 U.S.C. § 1331.  This Court also has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  This Court has personal jurisdiction over Ohio National because its principal place of business is in the State of Ohio, and because at all relevant times it has conducted substantial business operations within this District and throughout the state of Ohio.

8.      Venue is proper in this District under 28 U.S.C. § 1391 because Ohio National has its principal place of business in this District, and does substantial business within this District.

9.      The Selling Agreements elect Ohio law to govern all disputes arising from the agreement.  As third-party beneficiaries to the contract, Plaintiff and all class members, as well as Defendant, are bound by the Selling Agreements, and thus Ohio law applies to this case.  In

the alternative, Ohio courts apply the Restatement (Second) of Conflicts of Laws, which calls for the law of the state having "the most compelling interest" in having its law apply to the dispute should govern. As the Defendant is an Ohio corporation with its headquarters in this state, distributing insurance products throughout the country, Ohio has the "most compelling interest" in the adjudication of the status of the relationship between Defendant and its counter-parties, and thus Ohio law applies to the entire dispute.

## III.    PARTIES

10.    Plaintiff Lance Browning is a resident of Whitehouse, Texas.

11.    Defendant The Ohio National Life Insurance Company is an Ohio corporation with its principal place of business at One Financial Way, Cincinnati, Ohio 45242.

12.    Defendant Ohio National Life Assurance Company is an Ohio Corporation with its principal place of business at One Financial Way, Cincinnati, Ohio 45242. Ohio National Life Assurance Company is a subsidiary of The Ohio National Life Insurance Company.

13.    Defendant Ohio National Equities, Inc., is an Ohio corporation with Ohio Corporation with its principal place of business at 237 William Howard Taft Road, Cincinnati, Ohio 45219. Ohio National Life Assurance Company is a subsidiary of The Ohio National Life Insurance Company.

## IV.    FACTUAL BACKGROUND

### A.    The Ohio National Variable Annuity with a Guaranteed Minimum Income Benefit Rider

14.    A variable annuity is a contract sold by an insurance company under which the owner pays a lump sum premium to an insurance company, the insurance company purchases a portfolio of securities with those funds, and the owner then receives future payments based on the performance of the contract's underlying securities. The performance of these securities, usually mutual funds, dictates the size of the annuity payment.

15.　　In a "guaranteed minimum income benefit," or "GMIB" annuity, the annuity contract entitles the owner to receive a certain minimum level of payment monthly on the annuity, regardless of market conditions or other factors.

16.　　Ohio National sold GMIB Variable Annuities through multiple channels, including its own captive broker-dealer and its securities representatives, as well as through many other broker-dealers and their affiliated securities representatives throughout the country.

17.　　To facilitate those sales, Ohio National entered into Selling Agreements with broker-dealers (collectively, "Selling Agreement" or the "Agreement").  Plaintiff's counsel have reviewed multiple versions of the Selling Agreement entered into between Ohio National and broker-dealers.

18.　　The Selling Agreement contemplated that broker-dealers would cause securities representatives to perform the selling and servicing of the Annuities, as set forth in the "whereas" clause which states that Ohio National "propose[s] to have [broker-dealer's] registered representatives ("Representatives") who are, or will become, duly licensed insurance agents, solicit the sales of the Contracts. . . ."

19.　　Moreover, the Selling Agreement requires the broker-dealer to warrant that its securities representatives meet certain guidelines, including licensing requirements.  The Selling Agreement obligates the broker-dealer to direct and supervise the work of the securities representatives.

20.　　The Selling Agreement states that commissions for the sale of these annuities shall be paid to the broker-dealer based on the Commission Schedule "**in effect at the time that the Contract Payments are received**" by Ohio National.  (Emphasis added.)

21.　　Said another way, Ohio National is obligated, pursuant to the Selling Agreement, to pay commissions for a particular Annuity as are set forth in the applicable Commission Schedule in effect *at the time the annuity is sold and Ohio National receives the customer's lump sum payment*.

22.     The Selling Agreement also expressly contemplates that those commissions paid to the broker-dealer pursuant to sales of Annuities would be passed on, at least in part, to the securities representatives themselves, as the Selling Agreement states "[c]ompensation to the broker-dealers Representatives for Annuities solicited by the Representative and issued by ONL will be governed by an agreement between [broker-dealer] and its Representatives, and its payment will be the [broker-dealer's] responsibility.*"*

23.     Finally, the Selling Agreement states that the terms of compensation shall survive the agreement unless the agreement is terminated for cause by Ohio National, and so long as the broker-dealer remains in good standing with appropriate regulatory agencies and is the broker-dealer of record for the account.

24.     Ohio National has made no attempt, nor could it, to assert that its cancellation of the Selling Agreement is for cause.

**B.      Securities Representatives are Intended Beneficiaries of the Selling Agreement**

25.     While securities representatives such as Plaintiff and class members are not named parties to the Selling Agreement, the Selling Agreement makes clear that they are intended beneficiaries of the contract.

26.     Ohio law incorporates Section 302 of the Second Restatement of Contracts with regard to intended beneficiaries under a contract.

27.     Under the Restatement, "[u]nless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either: (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."

28.     In Ohio, if the promisee intends that a third party should benefit from the contract, then that third party is an intended beneficiary who has enforceable rights under the contract.

- 6 -

29.     The Selling Agreement explicitly contemplates that broker-dealers will delegate the marketing and sale of Annuities to their employees or other third-parties who will act as "Representatives" as set forth in the Selling Agreement.  Commissions paid by Ohio National to the broker-dealers will pass through to these securities representatives according to a separate agreement between the broker-dealer and the securities representative.

30.     The Selling Agreement manifests an intention that securities representatives such as Plaintiff and Class members will benefit from the Selling Agreement, in the form of pass-through commissions, including trailing commissions.  For this reason, Plaintiff and Class Members are third-party beneficiaries under the contract.

### C.     Ohio National Announces that It Will Terminate Trailing Commissions

31.     On September 28, 2018, Ohio National sent a letter to many or all of the broker-dealers with which it had a Selling Agreement, informing them that it was cancelling those agreements, effective December 12, 2018.

32.     As part of that letter, Ohio National also informed the broker-dealers it would no longer be paying trailing commissions, even on existing, valid Annuities.

33.     Ohio National provided no justification for this move.  Moreover, Ohio National intends to continue to pay trailing commissions to its own captive broker-dealer's securities representatives with regard to the Annuities, as well as to the securities representatives who are with Morgan Stanley.

34.     Pursuant to the terms of the Selling Agreement, Ohio National is obligated to pay trailing commissions to broker-dealers for all existing Annuities that are not surrendered or annuitized.  While Ohio National may terminate the Selling Agreement, and thus end the ability of broker-dealers and securities representatives to promote and sell new Annuities going forward, it may not unilaterally declare that it will not pay trailing commissions on annuities that have already been sold and continue to be in force and are being serviced by securities representatives.

35.     By announcing that it will cease paying trailing commissions as of December 12, 2018, Ohio National has breached the Selling Agreement as to existing Annuities that have not been surrendered or annuitized.

**D.     Facts Relating to the Named Plaintiff**

36.     Plaintiff Lance Browning is a securities representative with LPL Financial LLC ("LPL").  Plaintiff has been with LPL since August 2012.  Plaintiff was with Morgan Keegan from February 2005 until August 2012.  Before that, Plaintiff was with UBS/PaineWebber from September 1997 until February 2005.  LPL, Morgan Keegan, and UBS are all parties to a Selling Agreement with Ohio National.  Plaintiff is entitled to trailing commissions pursuant to each of those Selling Agreement.

37.     Plaintiff has sold over 100 Annuities that have currently not been surrendered, annuitized, or under a death claim.  The trailing commissions he has received as a result of those annuities has been a significant part of his business, having earned and received approximately $89,000 in trailing commissions per year for many years.  Based on his calculation, he is entitled to that same amount – approximately $89,000 – in trailing commissions in 2019 alone, from those Annuities already existing and in place.

38.     Pursuant to Ohio National's announced policy, Plaintiff will not receive any trailing commissions after December 12, 2018, even if he continues to provide advice and recommendations to his customers who own Annuities.  As such, he is damaged as a result of Ohio National's breach of the Selling Agreement.

**V.     CLASS ACTION ALLEGATIONS**

39.     Plaintiff brings this suit as class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Class:

> All persons who: (1) acted as securities representatives pursuant to a Selling Agreement between a broker-dealer and Ohio National; and (2) solicited the sale of an Ohio National guaranteed minimum income benefit Variable Annuity that is currently an active contract.

40.     Excluded from the Class are: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Ohio National, its subsidiaries, parents, successors, predecessors, and any entity in which Ohio National has a controlling interest, and its current or former employees, registered and/or securities representatives, officers, and directors; (3) Morgan Stanley, its affiliates and any of its affiliated securities representatives; (4) counsel for Plaintiff and Ohio National (and employees of their firms); and (5) legal representatives, successors, or assigns of any such excluded persons.

41.     The Class meets all of the criteria required by Federal Civil Rule 23(a).

42.     The Class Members are so numerous that joinder of all Members is impracticable. The exact number and identities of Class Members are unknown at this time, but are likely in the thousands.  The identities of Class Members are ascertainable through Ohio National's records and/or Class Members' records, and other means.

43.     Common questions of law and fact exist as to all Class Members.  These common questions of law or fact predominate over any questions affecting only individual Members of the Class.  Common questions include, but are not limited to, the following:

        a.     Whether Ohio National breached the Selling Agreement with broker-dealers by announcing that it would no longer pay trailing commissions;

        b.     Whether Plaintiff and Class Members are third-party beneficiaries of the Selling Agreement;

        c.     Whether Ohio National has been or will be unjustly enriched as a result of its decision not to pay trailing commissions as set forth in the Selling Agreement and the corresponding Schedule of Commissions;

        d.     Whether Ohio National tortuously interfered with the business relationship between Plaintiff and Class Members and their broker-dealers;

        e.     Whether Ohio National is liable to Plaintiff and Class Members under a claim of promissory estoppel;

f.      Whether Plaintiff and Class Members are entitled to restitution, damages, compensation, or other monetary relief; and

g.      Whether Plaintiff and Class Members are entitled to declaratory relief to enforce the terms of the Selling Agreement.

44.     Each Selling Agreement is substantially similar with respect to the entitlement of the broker-dealer to specific trailing commissions for particular Annuities as set forth in the applicable Commission Schedule in effect at the time Ohio National received the customer's premium payment.  Indeed, when Ohio National announced its decision to terminate the Annuities, it made no distinctions among different broker-dealers, which likewise suggests that the Selling Agreements are substantially similar for purposes of the questions at issue in this lawsuit.

45.     Common sources of evidence may be used to demonstrate Ohio National's unlawful conduct on a class-wide basis, including, but not limited to, documents and testimony about its decision to terminate the Selling Agreement and the payment of trailing commissions; documents and testimony relating to its decision to continue to pay those trailing commissions only to its own employees and/or agents and to broker-dealer Morgan Stanley, and documents and testimony demonstrating the amount of damages suffered by Plaintiff and Class Members.

46.     Plaintiff's claims are typical of the claims of the Class he seeks to represent, in that the named Plaintiff and all Members of the proposed Class have suffered similar injuries as a result of the same practices alleged herein.  Plaintiff has no interests adverse to the interests of the other Class Members.

47.     Plaintiff will fairly and adequately protect the interests of the Class, and has retained attorneys well experienced in class actions and complex litigation as their counsel, including cases in the financial services field.

48.     The Class also satisfies the criteria for certification under Federal Civil Rules 23(b) and 23(c).  Among other things, Plaintiff avers that Ohio National has acted or refused to act on grounds that apply generally to the proposed class, thereby making final injunctive relief

or declaratory relief described herein appropriate with respect to the proposed class as a whole; that questions of law or fact common to the Class predominate over any questions affecting only individual members, and that class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy which is the subject of this action.  Plaintiff also avers that certification of one or more subclasses or issues may be appropriate for certification under Federal Civil Rule 23(c).  Plaintiff further states that the interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and that the management of the Class will not be difficult.

49.     Plaintiff and other Class Members have suffered injury, harm, and damages as a result of Ohio National's unlawful and wrongful conduct.  Absent a class action, Ohio National will deprive Plaintiff and Class Members of compensation to which they are entitled.  Absent a class action, Ohio National will be allowed to continue such conduct with impunity and benefit from its unlawful conduct.

## VI.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION
#### Breach of Contract

50.     Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this claim on behalf of the Class set forth above.

51.     Ohio National has a contractual relationship with broker-dealers via the Selling Agreement, under which Ohio National is obligated to pay trailing commissions on active Annuities.

52.     Pursuant to those Selling Agreement, some portion of those commissions will pass through to securities representatives such as Plaintiff and Class Members.  As such, Plaintiff and Class Members are third-party beneficiaries of the Selling Agreement on active Annuities.

53. In its September 28, 2018 letter, Ohio National announced that as of December 12, 2018, it will no longer pay trailing commissions on active Annuities. In so doing, it has breached the Selling Agreement.

54. To the extent that Ohio National's actions constitute an anticipatory, rather than a present breach, under Ohio law, upon an anticipatory breach, the injured party may terminate the contract and sue the breaching party prior to the time that the breaching party has announced it will no longer perform. Plaintiff and Class Members, as third party beneficiaries, hereby exercise that right and bring this claim at this time.

55. Plaintiff and Class Members have been and will be damaged by Ohio National's conduct, in that they will not receive pass-through trailing commissions to which they are entitled flowing from the Selling Agreement and the related Schedules of Commissions.

56. Plaintiff and Class Members seek specific performance of the Selling Agreement and the related Schedules of Commissions, which obligate Ohio National to pay trailing commissions on Annuities as long as those Annuities are active.

57. In the alternative, Plaintiff and Class Members seek monetary damage stemming from Ohio National's breach of the Selling Agreement and their related Schedules of Commissions.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

58. Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, with the exception of the paragraphs above regarding breach of contract. This claim is brought in the alternative to the breach of contract claim. Plaintiff brings this claim on behalf of the Class set forth above.

59. Ohio National received a benefit, in the form of proceeds stemming from the sale of the Annuities. Some portion of those proceeds were to be passed back to Plaintiff and Class Members in the form of trailing commissions.

60.     By announcing that it would cease paying trailing commissions on active

Annuities, Ohio National will and has retained the benefits of its unlawful conduct.  Due to Ohio

National's conduct alleged herein, it would be unjust and inequitable under the circumstances for

Ohio National to be permitted to retain the benefit of its wrongful conduct.

61.     Plaintiff and the Class Members are entitled to restitution and/or damages from

Ohio National and/or an order of this Court proportionally disgorging all profits, benefits, and

other compensation obtained by Ohio National from its wrongful conduct.  If necessary, the

establishment of a constructive trust from which the Plaintiff and Class Members may seek

restitution or compensation may be created.

62.     Additionally, Plaintiff and the Class Members may not have an adequate remedy

at law against Ohio National, and accordingly plead this claim for unjust enrichment in the

alternative to other claims pleaded herein.

### THIRD CAUSE OF ACTION
### Tortious Interference with Business Relations

63.     Plaintiff realleges each and every allegation contained above, and incorporates by

reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this

claim on behalf of the Class set forth above.

64.     Plaintiff and Class Members have a business relationship with their broker-

dealers, under which, *inter alia*, Plaintiff and Class Members would receive pass-through trailing

commissions stemming from active Annuities.

65.     Ohio National was and is aware of the nature of this relationship, as the Selling

Agreement explicitly states that it would pay commissions to the broker-dealer, who would in

turn pass some portion of those commissions on to the securities representatives engaged in the

sale of the Annuities.

66.     By announcing that it would not pay trailing commissions to the broker-dealers

pursuant to the Selling Agreement and the related Schedules of Commissions, Ohio National

intentionally caused the pass-through arrangements between the broker-dealers and Plaintiff and Class Members to be terminated.

67.     As a result of its intentional action, Plaintiff and Class Members have suffered damages in the form of lost pass-through commissions that they would otherwise receive pursuant to the pass-through arrangements.

**FOURTH CAUSE OF ACTION**
**Promissory Estoppel**

68.     Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, with the exception of the paragraphs above regarding breach of contract.  This claim is brought in the alternative to the breach of contract claim.  Plaintiff brings this claim on behalf of the Class set forth above.

69.     Ohio National promised to make payments, including trailing commissions, to broker-dealers, which would, in turn, be passed on in large part to securities representatives.

70.     Ohio National reasonably expected that the promise of such payment would induce action on the part of broker-dealers and securities representatives in the form of soliciting sales of Ohio National annuities.

71.     The promise of such payment did in fact induce action on the part of broker-dealers and securities representatives.

72.     Plaintiff and Class Members justifiably relied on the representation of Ohio National that those commissions would be forthcoming

73.     Injustice can only be avoided by enforcement of Ohio National's promise to pay all commissions, including trailing commissions.

**FIFTH CAUSE OF ACTION**
**Declaratory Relief**
**28 U.S.C. § 2201**

74.     Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this claim on behalf of the Class as set forth above.

75.     An actual controversy has arisen and now exists between Plaintiff and the putative Class on the one hand, and Ohio National on the other, concerning Ohio National's obligation to pay trailing commissions pursuant to the Selling Agreement and the related Schedules of Commissions.  Ohio National has stated that it will no longer honor those agreements and pay the commissions as set forth in the Schedules of Commissions.

76.     Accordingly, Plaintiff and Class Members are entitled to seek a judicial determination of whether Ohio National is obligated to pay trailing commissions for all active Annuities.

77.     A judicial determination of the rights and responsibilities of the parties with regard to the Selling Agreement and the related Schedules of Commissions is necessary and appropriate at this time so that: (1) the rights of the Plaintiff and the Class may be determined with certainty for purposes of resolving this action; and (2) the Parties will have an understanding of Ohio National's obligations in the future given its continuing legal obligations and ongoing relationships with Plaintiff and Class Members.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff on his own and behalf of all others similarly situated, prays for relief as follows:

A.     For an Order certifying this case as a class action pursuant to Federal Civil Rule 23, appointing Plaintiff as Class Representative, and the undersigned as Class Counsel;

B.     Awarding monetary, punitive and actual damages and/or restitution, as appropriate;

C.     Awarding declaratory relief as permitted by law or equity to assure that the Class has an effective remedy;

D.     Prejudgment interest to the extent allowed by the law;

E.     Awarding all costs, experts' fees and attorneys' fees, expenses and costs of prosecuting this action; and

F.     Such other and further relief as the Court may deem just and proper.

## VIII.  JURY TRIAL DEMAND

Plaintiff requests a trial by jury on behalf of himself and all similarly-situated persons pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,

DATED:  November  6, 2018

By:  */s/ David P. Meyer*
        David P. Meyer

DAVID P. MEYER (0065205)
dmeyer@meyerwilson.com
MATTHEW R. WILSON (0072925)
mwilson@meyerwilson.com
JOHN C. CAMILLUS, of counsel
(0077435)
jcamillus@meyerwilson.com
MICHAEL J. BOYLE, JR. (0091162)
Email: mboyle@meyerwilson.com
MEYER WILSON CO., LPA
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

DENNIS J. CONCILLA (0012254)
dconcilla@cpmlaw.com
CARLILE PATCHEN & MURPHY, LLP
366 E Broad Street
Columbus, OH 43215
Telephone:  (614) 228-6135
Facsimile:  (614) 221-0216

*Counsel for Plaintiff Lance Browning*
*and the Putative Class*