**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| LANCE BROWNING, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:18-cv-763 |
| Plaintiff, | Dlott, J. |
| | Bowman, M.J |
| vs. | |
| THE OHIO NATIONAL LIVE INSURANCE COMPANY et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

This civil action is now before the Court on Defendants Ohio National Life Insurance Company ("ONLIC"), Ohio National Life Assurance Company ("ONLAC"), Ohio National Equities, Inc. ("ONEQ") (collectively, Ohio National"), and Ohio National Financial Services, Inc. ("ONFS")[1] motion for judgment on the pleadings (Doc. 15) and the parties' responsive memoranda. (Docs. 17, 21).

## I. Background and Facts

Plaintiff is one of the many licensed securities representatives of the broker-dealer LPL Financial LLC ("LPL") who have sold variable annuities to customers nationwide that feature a guaranteed minimum income benefit (GMIB) rider, offered by The Ohio National Life Insurance Company and its subsidiaries Ohio National Life Assurance Corporation and Ohio National Equities, Inc. (these three collectively referred to herein as, "Ohio

---

[1] The Amended Complaint asserts a single claim for tortious interference against ONFS. Plaintiff did not address this claim in response to ONFS's motion for judgment on the pleadings. Accordingly, for good cause shown and in the absence of any opposition, ONFS' motion for judgment on the pleadings should be granted and ONFS dismissed as a party to this case.

National" or "ON"). (Doc. 11, ¶ 1.) All of these entities operate under the umbrella of Ohio National Financial Services, Inc. ("ONFS"). *Id.* at 2.

Pursuant to the Selling Agreement entered into by Ohio National and LPL ("Selling Agreement"), LPL and its affiliated securities representatives, including Plaintiff, marketed and sold the Ohio National GMIB variable annuities (the "Annuities") to customers, with all customer premiums from those sales being paid directly to Ohio National. In return for promoting, selling, and servicing these complex Annuities, LPL and its affiliated securities representatives received commissions, including "trailing commissions," that were paid to LPL and affiliated securities representatives on a regular basis until and unless the Annuities were surrendered or annuitized. *Id.* at ¶ 2.

On September 28, 2018, Ohio National announced that it was terminating the Selling Agreement with LPL, and numerous other broker-dealers, with regard to the Annuities. As part of that termination, it also announced that it would no longer pay trailing commissions stemming from Annuities that were already in existence. Effective December 12, 2018, Ohio National stopped paying LPL and its affiliated securities representatives any trailing commissions on the Annuities. *Id.* at ¶ 3.

Thereafter, Plaintiff filed the instant action for breach of contract, unjust enrichment, tortious interference and promissory estoppel, Plaintiff also seeks an injunction to require Ohio National to live up to its obligations under the Selling Agreement and cease causing damage and irreparable harm, including the loss of goodwill and the negative impact to the business relationships and reputation of Plaintiff and the proposed class. Plaintiff additionally seeks declaratory relief resolving Ohio National's future obligations pursuant to the Selling Agreement with LPL. Plaintiff also brings this suit as

a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Class:

> All persons who: (1) act as securities representatives of LPL; and (2) have solicited the sale of an Ohio National guaranteed minimum income benefit Variable Annuity that that has not been surrendered or annuitized.

Ohio National moves for Judgment on the Pleadings asserting that Plaintiff lacks standing and/or fails to state a claim upon which relief can be granted.

**II.     Standard of Review**

A district court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard applicable to a Rule 12(b)(6) motion to dismiss. *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). Accordingly, "we construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). While such determination rests primarily upon the allegations of the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)) (emphasis omitted). The court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Commercial Money Ctr.*, 508 F.3d at 336. To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." Id.

The Sixth Circuit has explained the pleading requirements that are necessary to survive a Rule 12(c) motion as follows:

> In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level...." Id. at 1964–65 (internal citations omitted). In *Erickson v. Pardus*, ... 127 S. Ct. 2197, 167 L.Ed.2d 1081 (2007), decided two weeks after Twombly, however, the Supreme Court affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Id.* at 2200 (quoting Twombly, 127 S. Ct. at 1964). ... We read the *Twombly* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12.

*Tucker v. Middleburg–Legacy Place*, 539 F.3d 545, 549 – 550 (6th Cir. 2008) (quoting *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d at 295–96 (6th Cir. 2008)) (footnote omitted); see also generally, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. Analysis

Defendant Ohio National argues that Plaintiff is not a party to the Selling Agreement at issue and therefore lacks contractual privity to enforce the agreement.

*A. Selling Agreement*

The Selling Agreement states that the only parties thereto are the Ohio National Contracting Defendants and LPL. (Doc. 11, Ex. A). The Selling Agreement also specifically states that all commissions owed by Ohio National are to be paid to LPL—not to registered representatives:

> Commissions payable in connection with the Contracts shall be paid to BD, or its affiliated insurance agency, according to the Commission Schedule(s) relating to this Agreement as they may be amended from time to time and in effect at the time the Contract Payments are received by ONL. … ONL

4

> also reserves the right to adjust the compensation payable on sales of ONL products that replace existing ONL contracts and offset future compensation payable to BD against any compensation to be returned to ONL by BD.

*Id.* § 9.

The Selling Agreement further states that the matter of compensation to be paid by LPL to representatives like Browning is to be governed by separate agreements between them:

> Compensation to the BD's Representatives for Contracts solicited by the Representatives and issued by ONL will be governed by an agreement between BD and its Representatives and its payment will be the BD's responsibility.

*Id.*

*B.     Standing*

It is well established that "[a] person who is neither a party to the contract nor in privity with the parties, and who is not a third-party beneficiary of the contract, is said to lack 'standing' to enforce the contract's terms …." *Slorp v. Lerner, Sampson & Rothfuss,* 587 Fed. Appx. 249, 254 (6th Cir. 2014). In other words, "a non-party may not assert contract rights unless it is a third-party beneficiary under the contract or such standing is conferred by statute." *Akron v. Castle Aviation, Inc.*, 1993 Ohio App. LEXIS 2993, at *4 (Ohio Ct. App. 9th Dist., June 9, 1993). Thus, "a contract is binding only upon parties to a contract and those in privity with them." *Resource Title Agency, Inc. v. Morreale Real Estate Servs., Inc.*, 314 F. Supp. 2d 763, 770 (N.D. Ohio 2004).

Here, it is undisputed Browning is not a party to the Selling Agreement at issue. As a result, Ohio National asserts that Browning lacks standing to seek relief based on or arising out of the Selling Agreement based on actual party status, or contractual privity.

5

Plaintiff however, contends that he has standing because he is an intended third-party beneficiary.

To determine if a nonsignatory to a contract may enforce certain promises contained in the contract as a third-party beneficiary, courts must determine if the nonparty was an intended beneficiary using the "intent to benefit" test found in *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St. 3d 36, 40 (1988). Under that test, "the mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary." *Norfolk & Western Co. v. U.S.*, 641 F.2d 1201, 1208 (6th Cir. 1980).

For a third party to be an intended, as opposed to incidental, beneficiary under a contract, "there must be evidence that the contract was intended to directly benefit that third party." *Huff v. FirstEnergy Corp.*, 130 Ohio St. 3d 196, 200 (2011) (emphasis added). Stated otherwise, Ohio "courts have noted that for a person to claim intended third party beneficiary status, the contracting parties must have entered into the contract for the primary purpose of that person." *Daley v. Fryer*, 30 N.E.3d 213, 221 (Ohio Ct. App. 3rd Dist. 2015). In virtually every case, courts look for evidence of such intention or purpose within the four corners of the contract: "[T]he parties' intention to benefit a third party will be found in the language of the agreement." *Huff,* 130 Ohio St. 3d at 200.

Here, Ohio National contends that the plain and express language of the Selling Agreement makes clear that the ON Contracting Defendants committed to pay, and were previously responsible for paying, commissions solely to LPL. Notably, the language of Section 9 in the agreement demonstrates that the opposite of Plaintiff's allegation is true:

6

All matters of compensation between LPL and its representatives are to be addressed by separate agreements between them. (Doc. 11, Ex. A).

Ohio National further contends that there is no intended third-party beneficiary standing to enforce an entitlement to commissions where a contract between two parties – such as the Selling Agreement – either does not contain an express term providing for commissions to be paid to the third party or contemplates that the right of any third party to receive any commission is to be set forth in a separate agreement. *See Swarbick v. Umpqua Bank*, 2010 U.S. Dist. LEXIS 18351 (C.D. Cal., Feb. 26, 2010). *See also For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 2009 U.S. Dist. LEXIS 93088 (N.D. Ill., Oct. 6, 2009). As such, Ohio National argues that the Selling Agreement makes clear that the parties expressly intended to limit the obligation(s) of the ON Contracting Defendants to the payment of commissions to LPL, leaving the issue of payments to representatives as a subject for separate contracting, if any, between LPL and its representatives. Thus, to the extent Plaintiff received any benefit under the policy it was only incidental to the policy, making him an incidental third-party beneficiary and not an intended third-party beneficiary.

Here, it is undisputed that Plaintiff is not a party to the Selling Agreement between Ohio national and LPL. As detailed above, the Selling Agreement provides, *inter alia*, that "[c]ompensation to [LPL's] Representatives for Contracts solicited by the Representatives and issued by ONL will be governed by an agreement between BD and its Representatives and its payment will be the BD's responsibility." (Doc. 11, Ex. A, 9). Based on this language, Ohio National argues the agreement forecloses a finding that

7

such agreement was entered directly or primarily for the benefit of individual representatives, like Browning.

In support of this contention, Ohio National notes that other courts have held that agent/representatives under similar agreements were found not to be third party beneficiaries. See *Swarbick v. Umpqua Bank*, 2010 U.S. Dist. LEXIS 18351 (C.D. Cal., Feb. 26, 2010). *See also For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 2009 U.S. Dist. LEXIS 93088 (N.D. Ill., Oct. 6, 2009. Notably, in *Swarbick*, the court held that employees of the bank who were also registered securities representatives and dual agents of a broker-dealer, Woodbury Financial Services, were not third-party beneficiaries of a brokerage agreement between Woodbury and the bank under which Woodbury paid commissions to the bank for securities sales made by the dual agents.

Similarly, in *For Your Ease Only,* one company had an agreement with a second company to pay commissions on the second company's sales of certain products. The court held that the first company was not obligated to make commission payments to a third party based on third-party beneficiary theory, even though it knew the second company was using a portion of the commissions it received to compensate the third party for his related services under a separate arrangement. *See id.* at *9-11. See also *Halstead Prop. LLC v. Gluck*, 9 Misc. 3d 1123(A); 862 N.Y.S.2d 808 (Table), 2005 N.Y. Misc. LEXIS 2405 (N.Y. Sup. Ct., June 30, 2005) (holding a broker was not an intended third-party beneficiary of a sales contract between the buyer and seller of real estate, observing that "[w]hile a clause in the sales contract that acknowledges a broker's services and states that the seller shall pay the broker's commission would normally entitle the broker to sue as a third party beneficiary, the clause in question in this contract

8

states that the seller will pay the commission pursuant to a separate agreement."). *See also Lippert Mktg. Ltd. v. Kingwood Ceramics, Inc.*, 1998 U.S. Dist. LEXIS 15913, at *66 (N.D. Ill., Oct. 5, 1998) (court held that a contract provision stating that plaintiff Lippert, a third party, "will manage and service" a particular account on behalf of defendant "does not vault Lippert into third-[party] beneficiary status").

Ohio National further argues that when parties provide in their contract that third parties may be engaged to perform tasks beneficial to the contracting parties, such provisions do not endow third parties with enforceable rights under the main contract. *See Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119 (2nd Cir. 2005). See also *Artwear, Inc. v. Hughes*, 202 A.D.2d 76, 615 N.Y.S.2d 689 (App. Div. 1994). As such, Ohio National contends that the Selling Agreement makes clear that Ohio National and LPL intended such agreement "to benefit only themselves," despite the fact that the agreement contemplates, as a matter of common sense, that LPL would appoint and supervise representatives to assist in selling individual variable annuity products. Thus, at most, the representatives like Browning are incidental beneficiaries who have no right of enforcement.

Plaintiff, however, contends that the plain language of the Selling Agreement establishes that Plaintiff is an intended third-party beneficiary. In this regard, Plaintiff notes that Ohio law incorporates Section 302 of the Second Restatement of Contracts with regard to intended beneficiaries under a contract. *See Hill,* 36 Ohio St.3d 36 at 40, ("We adopt the statement of law with respect to intended and incidental beneficiaries found in Section 302 of the Restatement of the Law 2d, Contracts (1981) 439-440."). Plaintiff further argues that he and the proposed class members are third party

beneficiaries to the Selling Agreement because the intended relationship between Ohio National and LPL cannot be effectuated without the role of the representatives. The structure of the Selling Agreement contemplates that Plaintiff and proposed Class Members would sell and service Ohio National products, and would, in turn, receive compensation from Ohio National via LPL for that work, as seen by the fact that the Agreement contains provisions related to the licensing of LPL's Representatives.

Here, the agents are an essential part of the relationship between LPL and Ohio National as contemplated by both parties. Moreover, Section 9 states that Ohio National is not obligated to make direct payments to Plaintiff and Class Members in the normal course, but instead the Representatives are to receive such payments from LPL. No one disputes this. Plaintiff, however, notes that in evaluating intended beneficiary status, there is no requirement that the parties intend to benefit a third party by direct payment. *Vogan v. Hayes Appraisal Assocs.*, Inc., 588 N.W.2d 420, 423 (Iowa 1999) (applying Section 302).

Plaintiff further contends that Ohio National's reliance on *Swarbick and Halstead* is misplaced. Notably, *Swarbick* contains no discussion, analysis, or ruling whatsoever on the third-party beneficiary issue.[2] *Swarbick*, 2010 U.S. Dist. LEXIS 18351. Similarly, Plaintiff notes that the *Halstead* Court never reached any conclusion regarding the broker's third-party beneficiary status. Instead, at issue was a real estate sales contract

---

[2] *Swarbick* concerned a motion by a defendant-bank to overturn an arbitration award in favor of plaintiffs who were dual agents of the defendant-bank and a brokerage firm. The plaintiffs claimed they were entitled to back commissions that were owed to them by the bank subject to an agreement between the bank and the brokerage firm. *Id.* at *3. The arbitrator found that the plaintiffs were not intended beneficiaries of the contract between the brokerage firm and the bank but ruled in plaintiffs' favor on their separate breach of fiduciary duty claim. *Id.* at *7. In ruling on defendant's motion to vacate, the court never reviewed the contract at issue, but instead merely quoted the arbitrator's finding that the plaintiffs were not intended beneficiaries. Id. at *8

that required the seller to pay the broker's commission subject to a separate agreement between the broker and seller. The court denied the plaintiff-broker's motion for summary judgment because the broker failed to allege the existence of a separate agreement. *Id.* at *5.

Moreover, in a subsequent case citing *Halstead*, another court expressly noted that "[t]he fact that the amount of the broker's commission referred to in the lease or sales contract is defined only to the extent of being the subject of a separate agreement and that such agreement is oral rather than written does not render the obligor's promise to pay the commission unenforceable." *Atlantic Property Services LLC v. Gillespie*, 2008 N.Y. Misc. LEXIS 7976, *6 (N.Y. Sup. Ct. Mar. 31, 2008) (emphasis added) (citations omitted). *See also Schulte v. Carlson*, 2013 Iowa App. LEXIS 212, *9-11 (Ct. App. Feb. 13, 2013) (applying Section 302 of the Restatement of the Law 2d, Contracts; holding that the owner of a small financial services agency was entitled to commissions as a third-party beneficiary of a contract between a member of his agency who was an independent contractor of the agency and a broker-dealer under which the agency operated).

Plaintiff also asserts that Ohio National's reliance on *For Your Ease Only* is misguided. Notably, in that case there was no evidence that a default judgment debtor was an intended third-party beneficiary of a sales contract between the judgment creditor and a third-party company. *Id.* at *9-11. Unlike the facts of this case as alleged, there was no evidence that the judgment debtor was in any way necessary to effectuate the intention of the parties to the contract. Here, the third party is essential to the fulfillment of the contract.

Plaintiff further argues that the cases cited by Ohio National are not relevant to the instant action. *See Subaru Distribs.*, 425 F.3d at 119; *Artwear*, 202 A.D.2d at 76, 615 N.Y.S.2d at 689 (while two parties contemplate that one may engage a third party for the benefit of the contracting parties' relationship, that does not make that third party an intended beneficiary). According to Plaintiff, in neither case did the promisor exercise the contractual control over the third parties that ONL does here – such as requiring the use of representatives, recognizing their right to commissions, and obligating LPL to assure that the Representatives are appropriately licensed and trained. And finally, neither case involves the critical fact, as here, that the contracts could not be effectuated without the third parties. As previously noted, LPL is required by law to sell the ONL variable annuities only through the representatives.

Notably, although not cited by the parties in this case, the Court notes that the issue of standing raised in this case has been considered and rejected by the Court in *Benison, et al. v. The Ohio National Life Insurance Co., et al.*, No. 1:18-cv-12314 (D. Mass. April 3, 2019). Benison involved the same Ohio National standard form selling agreement, same defendants, and same standing argument that Ohio National presents here. Namely, Plaintiff Benison, a securities representative, sought to compel arbitration under its broker-dealer's (Commonwealth LLC) variable-annuity Selling Agreement with Ohio National as a third-party beneficiary. *Benison*, No. 1:18-cv-12314, Doc. 22 at 17–18. The issue was whether Plaintiff Benison had standing to compel the arbitration. Commonwealth LLC's selling agreement with Ohio National was materially the same as the Selling Agreement at issue in this case, with the exception of the Arbitration clause. Plaintiff Benison argued, relying on Ohio law in *Hill* and the Restatement (Second) of

Contracts, that securities representatives are third-party beneficiaries because the Selling Agreement shows an intent to benefit representatives and because the commission payments to Commonwealth LLC were meant to compensate representatives for their annuity sales. *Benison*, No. 1:18-cv12314, Doc. 22 at 17–18. Ohio National argued against this position, relying on the same law that it does in this case. Id. at Doc. 23 at 12 n.8. Ohio National claimed, like it claims now, that its Selling Agreement did not directly or primarily benefit securities representatives. Id. Ohio National also argued that the fact that the Selling Agreement required Benison to receive compensation under a separate agreement meant Benison could not be a third-party beneficiary. *Id.* Relevant here, the Court found:

> [E]ven if Benison were unable to compel ONLIC and ONLAC through her membership in FINRA and Commonwealth Equity had not already compelled Defendants to arbitration in this matter, Benison could compel arbitration as a third-party beneficiary of the Selling Agreement and the Addendum. As is required to vest rights in a third-party beneficiary, here the Selling Agreement "manifest[s] an intent to confer specific legal rights upon [the representatives]," *Hogan*, 914 F.3d at 40 (citation and internal quotation marks omitted), by referring to the representatives and their role throughout the Selling Agreement. The circumstances of the Selling Agreement also indicate that "the promisee intends to give the beneficiary the benefit of the promised performance," *Rae v. Air-Speed, Inc., 386 Mass.* 187, 194 (1982) (quoting Restatement (Second) of Contracts § 302(1) (1981)); see D. 1-1 ¶ 9 (outlining the process for allocating commissions to the representatives through Commonwealth Equity in the Selling Agreement).

*Benison,* 2019 WL 1470131, at *5.

The Court recognizes that this finding was made in connection with a motion to compel arbitration and found in a footnote with minimal analysis. However, based on the analysis above, consideration of Ohio law, and the factual similarities in *Benison* and the instant action, the undersigned is persuaded by the finding in *Benson*. As such, at this stage in the litigation, the undersigned finds that Plaintiff has stated a claim for relief *as*

an intended third-party beneficiary under the Selling Agreement. Accordingly, Ohio National's motion for judgment on the pleadings is not well-taken in this regard. [3]

*C. Noncontractual Claims*

In addition to breach of contract, Plaintiff also asserts claims for promissory estoppel and unjust enrichment. Ohio National contends that it is entitled to judgment as matter of law with respect to those claims as well. Such claims may proceed at this time. Notably, Ohio law holds that that an intended third-party beneficiary has the ability to assert a claim for promissory estoppel against the promisor in the underlying contract. *Green v. Jackson Nat'l Life Ins. Co.,* 195 F. App'x 398, 406-07 (6th Cir. 2006).

With respect to unjust enrichment, the undersigned recognizes that a plaintiff cannot recover on both a theory of breach of contract and a theory of unjust enrichment. However, at this stage in the litigation, Plaintiff may proceed with the alternative pleading of unjust enrichment in addition to his claim for breach of contract. *Baumgardner v. Bimbo Food Bakeries Distribution*, 697 F. Supp. 2d 801, 816 (N.D. Ohio 2010) ("Courts allow alternative pleading of unjust enrichment and breach of contract when faced with scenarios where one party alleges that the express contract is unenforceable or invalid, or does not encompass the dispute at issue."); *Kabealo v. J.E. Grote Co.*, 1994 Ohio App. LEXIS 3423, 1994 WL 411369 (Ohio App. 10 Dist. Aug. 9, 1994) (plaintiff could assert both breach of contract and quasi-contractual claims where reasonable minds could reach different conclusions as to whether an express contract existed between the parties); *Bihn v. Fifth Third Mortg. Co.,* 980 F. Supp. 2d 892, 904 (S.D. Ohio 2013) ("Said

---

[3] Plaintiff 's complaint also includes a claim for declaratory judgment. Because Plaintiff has stated a claim for breach of contract, Plaintiff's declaratory judgment claim should also proceed.

another way, under Ohio law, unjust enrichment claims may be pled in the alternative to a breach of contract claim when the existence of a contract is in dispute.").

*D. Consolidation*

"A district court can consolidate related cases under Federal Rule of Civil Procedure 42(a) *sua sponte.*" *See, e.g., Devlin v. Transp. Commc'ns Int'l Union,* 175 F.3d 121, 130 (2d Cir.1999) (citation omitted).

Federal Rule of Civil Procedure 42(a) affords the trial court the discretion to consolidate cases involving common questions of law or fact. *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1010–11 (6th Cir.1993); *Mitchell v. Dutton*, Nos. 87–5574, 87–5616, 87–5632, 87–5638, and 87–5647, 1989 WL 933, at *2 (6th Cir.Jan.3, 1989). Rule 42(a) states as follows:

> (a) Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a). "The underlying objective [of consolidation] is to administer the court's business with expedition and economy while providing justice to the parties." *Advey v. Celotex, Corp.*, 962 F.2d 1177, 1181 (6th Cir.1992) (internal quotation marks and citation omitted). In *Cantrell*, the Sixth Circuit Court of Appeals advised that "the decision to consolidate is one that must be made thoughtfully .... [c]are must be taken that consolidation does not result in unavoidable prejudice or unfair advantage." 999 F.2d at 1011. If the conservation of judicial resources achieved through consolidation "are slight, the risk of prejudice to a party must be viewed with even greater scrutiny." Id.

Here, the related cases involve common questions of law and fact. As such, a global disposition of the issues presented will best provide justice to the parties involved. Accordingly, in the interest of judicial economy and fairness, the undersigned further recommends that this matter be consolidated with the related case, *Cook v. The Ohio National Life Insurance Company et al.* Case No. 1:19-cv-00195.[4]

## IV. Conclusion

In light of the foregoing, it is therefore **RECOMMENDED** that Defendant Ohio National's motion for judgment on the pleadings (Doc. 15) be **DENIED.** However, it is **RECOMMENDED** ONFS's motion for judgment on the pleadings be *GRANTED* and Plaintiff's tortious interference claim be dismissed and ONFS be dismissed as a party in this case. (*See* p. 1, note 1). It is further **RECOMMENDED** that this matter be **CONSOLIDATED** with the related case, *Cook v. The Ohio National Life Insurance Company et al.,* Case No. 1:19-cv-00195.[5] As is the practice of this Court, it is **RECOMMENDED** that case numbers 1:18-cv-763 and 1:19-cv-00195 be consolidated into case number 1:18-cv-763 since that case was the first filed case.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[4] If *Veritas Independent Partners v. the Ohio National Insurance Company, et al*, Case No. 1:18-cv-769 was at the same procedural stage as these two cases, I would recommend that all three be consolidated.

[5] Consistent with this Ruling, a Report and Recommendation that Ohio National's motion to dismiss be denied in the *Cook* case will be filed separately in that case.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| LANCE BROWNING, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:18-cv-763 |
| Plaintiff, | Dlott, J. |
| | Bowman, M.J |
| vs. | |
| THE OHIO NATIONAL LIVE INSURANCE COMPANY et al., | |
| Defendants. | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).