IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Lance Browning, | : | |
| | : | Case No. 1:18-cv-763 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Rejecting Report and |
| Ohio National Life Insurance Company, | : | Recommendations and Granting |
| *et al.*, | : | Defendants' Motion for Judgment on the |
| | : | Pleadings |
| Defendants. | : | |

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings (Doc. 15), a Report and Recommendation ("R&R") (Doc. 26) recommending denial of the Motion for Judgment on the Pleadings, and Defendants' Objections (Doc. 30) to the R&R. The primary issue to be resolved is whether Plaintiff Lance Browning has standing to assert claims based on an alleged breach of a contract to which he is not a party. For the reasons that follow, the Court finds that Browning lacks standing. Accordingly, the Court will **REJECT** the R&R and **GRANT** the Motion for Judgment on the Pleadings.

I.     **BACKGROUND**

Browning is a licensed securities representative for LPL Financial LLC, a broker dealer. LPL Financial, through its representatives such as Browning, sold certain variable annuities issued by Defendants Ohio National Life Insurance Company, Ohio National Life Assurance Company, Ohio National Equities, Inc. (collectively, "Ohio National") pursuant to a Selling Agreement between Ohio National and LPL Financial. Browning was not a party to the Selling Agreement, but he asserts that he was an intended third-party beneficiary of the Selling Agreement. Browning alleges that Ohio National breached the Selling Agreement by stopping

1

payment of trail commissions on previously sold variable annuity contracts after Ohio National terminated the Selling Agreement without cause effective December 12, 2018.

Browning initiated this case on November 6, 2018, and he filed an Amended Complaint on January 11, 2019. (Docs. 1, 11.) He seeks to represent a Rule 23 class of LPL Financial representatives: "All persons who: (1) act as securities representatives of LPL; and (2) have solicited the sale of an Ohio National guaranteed minimum income benefit Variable Annuity that has not been surrendered or annuitized." (Doc. 11 at PageID 287.) He asserts claims against Ohio National for (1) breach of contract, (2) unjust enrichment, and (3) promissory estoppel. (Doc. 11 at PageID 289–293.) He also asserted a tortious interference with business relations claim against Ohio National and Defendant Ohio National Financial Services, Inc., but he has withdrawn that claim. (*Id.*; Doc. 32 at PageID 465.)[1]

Ohio National moved for judgment on the pleadings arguing primarily that Browning lacked standing to bring claims based on the Selling Agreement between LPL Financial and Ohio National. On June 28, 2019, the Magistrate Judge issued an R&R concluding that the Browning, as a securities representative for LPL Financial, was an intended third-party beneficiary of the Selling Agreement. (Doc. 26 at PageID 418–419.) She recommended denying the Motion for Judgment on the pleadings as to the breach of contract, promissory estoppel, and unjust enrichment claims. (*Id.* at PageID 421.)

Ohio National filed Objections to the R&R, and Browning opposed those Objections. (Docs. 30, 32.) This Court held oral arguments on the matter on September 17, 2019. The parties agreed that Ohio National is entitled to judgment on the pleadings on the breach of contract and promissory estoppel claims if Browning was not an intended third-party beneficiary

---

[1] Browning also asserted a purported claim for declaratory relief. (Doc. 11 at PageID 293.) However, that is a non-substantive claim, and Browning can obtain declaratory relief only if he proves breach of contract, promissory estoppel, or unjust enrichment.

to the Selling Agreement. However, Browning disputed that his unjust enrichment claim succeeds or fails based on whether he was an intended third-party beneficiary.

## II. STANDARD OF LAW

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings. The legal standard for adjudicating a Rule 12(c) motion is the same as that for adjudicating a Federal Rule of Civil Procedure 12(b)(6) motion. *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007). A district court must accept the well-pleaded allegations in the amended complaint as true and determine whether the plaintiff has made a "short and plain statement of the claim showing that [he] is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (quoting Federal Rule of Civil Procedure 8(a)).

Pursuant to Federal Rule of Civil Procedure 72(b), the district court considers de novo any part of a magistrate judge's report and recommendation on a dispositive motion to which a party has filed objections.

## III. ANALYSIS

### A. Breach of Contract and Promissory Estoppel

Browning asserts claims for breach of contract and promissory estoppel alleging that Ohio National wrongfully terminated the payment of trail commissions on previously sold variable annuities. (Doc. 11 at PageID 289–290, 292.) These claims both are dependent upon a finding that he, as an LPL Financial securities representative, can enforce the Selling Agreement between LPL Financial and Ohio National as an intended third-party beneficiary. A third-party beneficiary has enforceable rights under a contract only if he is an "intended beneficiary" as opposed to an "incidental beneficiary." *Norfolk & W. Co. v. U.S.*, 641 F.2d 1201, 1208 (6th Cir. 1980). Ohio has adopted the "intent to benefit" test stated in the Restatement (Second) of

3

Contracts § 302 to distinguish intended beneficiaries from incidental beneficiaries. *Hill v. Sonitrol of SW Ohio, Inc.*, 36 Ohio St. 3d 36, 521 N.E.2d 780, 784 (1988); *see also CSX Transp., Inc. v. Columbus Downtown Dev. Corp.*, 307 F. Supp. 3d 719, 738 (S.D. Ohio 2018) (citing *Hill* and quoting § 302). Section 302 provides in relevant part as follows:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . .
>
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302 (1981). Under this test, "if the promisee . . . intends that a third party should benefit from the contract, then that third party is an 'intended beneficiary' who has enforceable rights under the contract." *Hill*, 521 N.E.2d at 784–785 (quoting *Norfolk*, 641 F.2d at 1208). More recently, the Supreme Court of Ohio has stated that "there must be evidence that the contract was intended to directly benefit that third party." *Huff v. FirstEnergy Corp.*, 130 Ohio St. 3d 196, 957 N.E.2d 3, 7 (2011).

The Court incorporates the analysis in the R&R as if fully rewritten herein to the extent that the Magistrate Judge set forth the arguments of both parties in detail and summarized case law supporting their arguments. (Doc. 26 at PageID 411–417.) Ultimately, the Magistrate Judge was persuaded to follow the conclusion in *Commonwealth Equity Services, LLC and Margaret Benison v. The Ohio National Life Insurance Company, et al.*, No. 18-cv-12314-DJC, Doc. 28 (D. Mass. April 3, 2019) ("*Benison*"), that a securities representative was an intended third-party beneficiary of a similar selling agreement between Commonwealth Equity and Ohio National. (*Id.* at PageID 417–418.) The primary issue in *Benison* was whether the district court had to enforce an arbitration provision in an addendum to the selling agreement between Commonwealth Equity and Ohio National. *Benison*, Doc. 28 at 5, 8. The district court held that

4

the contractual parties were bound by the arbitration agreement. *Id.*, Doc. 28 at 10. The district court then separately, in a footnote which constituted dicta to the holding, addressed whether Benison, the representative, could have enforced the arbitration provision in the selling agreement as an intended third-party beneficiary. *Id.*, Doc. 28 at 10 n.3. The district court summarily concluded that Benison was an intended third-party beneficiary and could enforce the selling agreement. *Id.* For the reasons that follow, this Court respectfully disagrees with the dicta conclusion in *Benison* and with the Magistrate Judge to the extent she was persuaded by *Benison*.

Browning, on behalf of a class of similarly-situated representatives, seeks to enforce § 9 of the Selling Agreement which involves the payment of trail commissions. Relevant to Browning's underlying claim against Ohio National for breach of contract, § 9 stated that "[t]he terms of compensation shall survive this Agreement unless the Agreement is terminated for cause by [Ohio National]." (Doc. 10-1 at PageID 106.)[2] Browning alleges that Ohio National breached this provision in § 9 because it ceased paying trail commissions under the Selling Agreement after it terminated the Selling Agreement without cause. However, upon examination, Browning and other representatives were not the parties who were intended to receive the benefit of compensation under the Selling Agreement.

To begin, LPL Financial and Ohio National were the only parties to the Selling Agreement. (*Id.* at PageID 105, 109.) Section 9 of the Selling Agreement explicitly stated that "[c]ommissions payable in connection with the [variable annuity] contracts shall be paid to [LPL Financial], or its affiliated insurance agency, according to the Commission Schedule(s) relating

---

[2] Regarding the underlying dispute, Ohio National relies on a provision in the Commission Schedule attached to the Selling Agreement to assert that it was obligated to pay trail commissions only so long as the Selling Agreement remained in force. The Court does not express any opinion on the merits of the underlying dispute in this Order.

to this Agreement." (*Id.* at PageID 106.) It gave Ohio National the right to "offset future compensation payable to [LPL Financial] against any compensation to be returned to [Ohio National] by [LPL Financial]." (*Id.*) Therefore, under the Selling Agreement the payment of compensation—minus any offsets from compensation—flows only from Ohio National to LPL Financial.

In fact, LPL Financial and Ohio National disclaimed any intention for Ohio National to render payment to LPL Financial's representatives for the solicitation of the variable annuity contracts. Section 9 of the Selling Agreement also provided that "[c]ompensation to the [LPL Financial's] Representatives for Contracts solicited by the Representatives and issued by ONL will be governed by agreement between [LPL Financial] and its Representatives and its payment will be the BD's responsibility." (*Id.*) This provision did not mandate that LPL Financial remit the commissions it receives from Ohio National for the sale of its annuities to the representative(s) who sold the annuities. Rather, it provided that any compensation paid to the representatives such as Browning will be LPL Financial's responsibility. (*Id.*) The requirement to have a separate contract cuts against any suggestion that the Selling Agreement was intended to directly benefit representatives like Browning. *See Huff*, 957 N.E.2d at 7 (direct benefit requirement). Significantly, this Selling Agreement provision complied with Financial Industry Regulatory Authority ("FINRA") Rule 2320, which prohibits securities representatives from receiving compensation for the sale of variable insurance policies from the company that issued the policies.[3]

---

[3] This FINRA Rule creates a procedural dilemma if the Court were to find that the representatives were intended third-party beneficiaries. In the event that Ohio National was found liable for breach of contract, it is questionable whether the Court could issue a judgment requiring Ohio National to pay damages to representatives for unpaid trail commissions because the FINRA Rule 2320 prohibits Ohio National from paying compensation to the representatives for the sale of variable annuity contracts.

Browning points out in rebuttal that the Schedule of Commissions, that was attached to and incorporated in the Selling Agreement, included a provision in which LPL Financial elected to allow its representatives to select among several trail commission plan options. (Doc. 10-1 at PageID 110.) While this suggests that LPL Financial might remit at least a portion of the trail commissions to its representatives, it was not a commitment to remit each trail commission payment in full to the representatives. LPL Financial could have elected on the same form to make the trail commission plan selection itself instead. The timing, amount, and other terms of any payment from LPL Financial to Browning or other representatives still was required to be set forth in a separate contract as stated in § 9 of the Selling Agreement. In fact, that same Schedule of Commissions also stated explicitly that "[t]rail commissions will continue to be paid [from Ohio National] to the broker dealer of record [LPL Financial]." (*Id.* at PageID 111.) On the whole, the Court finds that the payment provisions of the Selling Agreement do not establish that representatives like Browning were more than incidental beneficiaries of the contract.

Additionally, the numerous other references to representatives in the Selling Agreement do not demonstrate an intent to give enforceable rights to the representatives. The fourth "Whereas" clause in the Selling Agreement stated that Ohio National proposed to have LPL Financial's representatives solicit sales of its variable annuity contracts. (Doc. 10-1 at PageID 105.) However, it is not remarkable that a limited liability company would act through its employees or agents. Other references to representatives in the Selling Agreement appear intended for Ohio National's protection. For example, § 4 required LPL Financial to certify that its representatives had not been convicted of a felony or a misdemeanor involving fraud or dishonesty; § 5 required LPL Financial to ensure that its representatives were properly registered, qualified, and supervised; § 16 stated that both LPL Financial and its representatives were

independent contractors with respect to Ohio National; and § 17 required LPL Financial to notify Ohio National if legal proceedings were initiated against its representatives. (Doc. 10-1 at PageID 105–107.) These sections do not evidence an intent to confer benefits upon representatives, but rather to provide protection for Ohio National from unscrupulous, unqualified, or negligent representatives.

The Court finds the case of *Joseph v. Hosp. Serv. Dist. No. 2*, 939 So. 2d 1206 (La. 2006) to be instructive. The case involved a contract between a hospital and a medical corporation for the medical corporation's doctors to provide anesthesia services to the hospital. *Id.* at 1208. When the hospital terminated the contract, individual doctors in the medical corporation sought to enforce it as intended third-party beneficiaries. *Id.* at 1208–1209. The Supreme Court of Louisiana held that the doctors were not intended third-party beneficiaries under the contract even though they "perform[ed] the services to satisfy the contractual obligation of the corporation." *Id.* at 1214–1215. It stated that "all corporations act through individuals[,]" but that the breach of contract claim was "to be asserted by the corporation, not the employees, officers or shareholders." *Id.* at 1215. Further, although the contractual language was not set out, the Supreme Court's explanation of why the doctors were not third-party beneficiaries is pertinent to this case as well:

> While the contract imposed certain obligations on the doctors regarding their qualifications, there was no benefit provided in the contract directly to the doctors that they could demand from the Hospital. The doctors were not to be paid by the Hospital. The doctors were not hired by the Hospital. The doctors had no right to demand employment by the Hospital. In fact, the contract specifically provided there was no intent to create an employer/employee relationship between the parties. Based on our review of the contract, there is no obligation owed by the Hospital to the individual doctors which will be discharged by performance of the contract because the contract provides no direct benefit to the doctors.

*Id.* at 1214.

8

Likewise, here, the Selling Agreement is readily enforceable by LPL Financial, not its representatives who provided the service of soliciting the sales of variable annuity contracts. Ohio National did not hire the representatives, was not their employer, and did not pay them compensation. The financial benefit of compensation flowed from Ohio National to LPL Financial. In fact, Ohio National was prohibited by FINRA Rule 2320 from paying compensation to representatives like Browning. The Court concludes that the securities representatives were not intended third-party beneficiaries under the Selling Agreement. Therefore, Browning, as an LPL Financial representative, does not have standing to assert claims for breach of the Selling Agreement or for promissory estoppel against Ohio National.

**B.    Unjust Enrichment**

Browning asserts a claim for unjust enrichment in the alternative to his breach of contract claim. (Doc. 11 at PageID 290–291.) To establish a claim for unjust enrichment in Ohio, a plaintiff must prove three elements: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 904 (S.D. Ohio 2013) (quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 465 N.E.2d 1298, 1302 (1984)). Unjust enrichment claims ordinarily can be pleaded in the alternative to breach of contract, but only when the existence of the contract is in dispute. *Id.* This is because "a plaintiff may not recover under the theory of unjust enrichment when an express contract covers the same subject." *Id.* (citing *Wuliger v. Mfg. Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009)). The Selling Agreement here covers the subject of whether or not Ohio National had the obligation to pay trail commissions on previously sold variable annuity

contracts after it terminated the Selling Agreement. Therefore, Browning cannot bring an unjust enrichment claim to recover payment for the same prior sales of variable annuity contracts.

## IV. CONCLUSION

For the foregoing reasons, the Report and Recommendations (Doc. 26) is respectfully **REJECTED** and Defendants' Motion for Judgment on the Pleadings (Doc. 15) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 2nd day of October, 2019.

BY THE COURT:

*Susan J. Dlott*
Susan J. Dlott
United States District Judge